**POWELL, n.k.a. Tomer, Appellee,**

v.

**POWELL, Appellant.**

[Cite as *Powell v. Powell* (1996), 111 Ohio App.3d 418.]

Court of Appeals of Ohio,
Fourth District, Athens County.

No. 95 CA 1680.

Decided May 30, 1996.

*Joseph B. Yanity, Jr.,* for appellee.

*K. Robert Toy,* for appellant.

---

PETER B. ABELE, Presiding Judge.

This is an appeal from a judgment entered by the Athens County Common Pleas Court. The court found that Earl Frank Powell, defendant below and appellant herein, had failed to prove that his son, Jason, is emancipated. As a result, the court further found that appellant owes delinquent child support and must continue to pay child support in the future to Louverna Powell, n.k.a. Tomer, plaintiff below and appellee herein. Appellee is Jason's mother and custodial parent.

Appellant assigns the following errors:

First Assignment of Error:

"Credit toward court ordered child support should be given to the obligor when social security benefits are being paid directly to a defendant [*sic*] who is now an adult."

Second Assignment of Error:

"The emancipation of a minor child competent to support himself discharges a parent from an obligation for support."

Appellant and appellee were married on February 23, 1962. On June 5, 1974, the couple bore a son, Jason Scott Powell. Jason was born with spina bifida. When appellant and appellee divorced in July 1979, appellee was awarded custody

of Jason. The divorce decree required appellant to pay child support to appellee. The order read in pertinent part as follows:

"[Appellant] shall pay child support * * *; said support payments to continue for Jason Scott Powell until he reaches the age of eighteen (18), becomes emancipated or sooner dies and to continue thereafter for so long as he is certified to be a disabled person by competent medical authority."

Jason turned eighteen years old on June 5, 1992 and graduated from high school in June 1993. Appellant made no payments after Jason graduated from high school.

On July 20, 1993, the Athens County Child Support Enforcement Agency ("CSEA") filed a motion asking the trial court to determine whether Jason was emancipated and to determine if appellant owed any child support or arrearage. On December 14, 1993, the court appointed a doctor to perform a medical evaluation of Jason. The doctor filed his findings with the court on January 31, 1994. After an evidentiary hearing, the referee filed her report on February 16, 1995. Appellant filed objections to the report on May 4, 1995.

In its June 14, 1995 judgment entry, the trial court adopted the referee's report with some modifications. Specifically, the court found that the doctor's evaluation of Jason, combined with his being qualified for Supplemental Security Income ("SSI"), constitutes certification by a medical authority that Jason is a disabled person. Thus, the court found that appellant failed to prove that Jason is emancipated. The court further found that appellant's duty to pay support was continuous from June 1993 to the present. Accordingly, the court ordered appellant to resume making his monthly child support payments and to also pay delinquent support dating back to June 1993. Appellant filed a timely notice of appeal.

## I

In his first assignment of error, appellant asserts that the trial court abused its discretion because the court did not give appellant credit for Jason's SSI benefits when calculating the amount of child support owed by appellant. Appellant argues that the trial court should have set off the benefits that Jason receives from SSI against the arrearage and the monthly payments owed by appellant.[1]

---

1. Specifically, appellant argues that former R.C. 3109.05(A)(1) (now R.C. 3113.215[B]) requires the court to consider "the financial resources and earning ability of the child" when determining child support. Appellant contends that Jason's benefits constitute financial resources and that the trial court did not consider the benefits when it made its decision.

R.C. 3105.65(B) gives courts continuing jurisdiction "to modify all matters pertaining to the allocation of parental rights and responsibilities for the care of the children, to the designation of a residential parent and legal custodian of the children, to child support, and to visitation." In *Booth v. Booth* (1989), 44 Ohio St.3d 142, 541 N.E.2d 1028, the court noted that an abuse-of-discretion standard applies to child support appeals:

" * * * We believe that common sense and fundamental fairness compel the application of the 'abuse of discretion' standard in reviewing matters concerning child support and visitation rights. As this court has held many times, an ' "abuse of discretion" * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable. * * * ' " *Id.* at 144, 541 N.E.2d at 1030.

An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181; *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. When applying an abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. *In re Jane Doe 1, supra; Berk v. Matthews* (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301; *Buckles v. Buckles* (1988), 46 Ohio App.3d 102, 546 N.E.2d 950.

In addressing whether appellant is in fact entitled to such a setoff, we note that under the statutory guidelines, a court may consider the financial resources and earning ability of the child. R.C. 3113.215(B)(3)(f). R.C. 3113.215(B) provides:

"(3) The court, in accordance with divisions (B)(1) and (2)(c) of this section, may deviate from the amount of support that otherwise would result from the use of the schedule and the applicable worksheet in division (E) of this section, through line 24, or in division (F) of this section, through line 23, in cases in which the application of the schedule and the applicable worksheet in division (E) of this section, through line 24, or in division (F) of this section, through line 23, would be unjust or inappropriate and would not be in the best interest of the child. *In determining whether that amount would be unjust or inappropriate and would not be in the best interest of the child, the court may consider any of the following factors and criteria:*

" * * * *

"(f) The financial resources and the earning ability of the child * * *." (Emphasis added.)

Furthermore, regarding the treatment typically given SSI benefits, we note that in a pre-guideline case, *Oatley v. Oatley* (1977), 57 Ohio App.2d 226, 11 O.O.3d 260, 387 N.E.2d 245, the court held that Social Security benefits that a handicapped child receives under the SSI program neither alter the father's

obligation for support nor constitute a change of circumstances warranting a modification of the support order. In *Oatley,* the court stated:

"We find that plaintiff is misinterpreting the relationship between his support obligation and the supplemental security income. The supplemental income payments are intended to insure a minimum level of income for persons who are over age 65, or blind, or disabled, who do not have sufficient income and resources to maintain a standard of living at the established federal minimum income level. * * * The supplemental security income payments are intended to supplement other income, not substitute for it. The amount of supplemental security income received is modified as the amount of the recipient's other income changes, not vice versa." *Id.,* 57 Ohio App.2d at 227–228, 11 O.O.3d at 261, 387 N.E.2d at 246.

Other courts have followed the reasoning in *Oatley, supra,* finding that payments made directly to the child based on the obligor's work history and earnings should be credited to the support obligation, while payments based on need and intended to supplement, not replace, income from other sources are not credited. *Compher v. Nickolich* (Mar. 4, 1987), Summit App. No. 12764, unreported, 1987 WL 7771; *Justice v. Justice* (June 24, 1987), Licking App. No. CA–3250, unreported, 1987 WL 13472; *Adkins v. Adkins* (Apr. 21, 1989), Wood App. No. WD–88–30, unreported, 1989 WL 38211.

This court has reached this result in the past. In *Wickline v. Wickline* (Mar. 31, 1994), Jackson App. No. 718, unreported, 1994 WL 132070, the appellee had custody of one of the couple's daughters. The daughter suffered viral encephalitis when only six months old. Due to her handicap, the child received Social Security payments. Appellant argued that the Social Security benefits should be treated as income to the appellee. The trial court disagreed with appellant. Citing *Oatley, supra,* we rejected the appellant's challenge of the court's decision.[2]

We note that the Fifth District reached a similar result in *Justice v. Justice* (June 24, 1987), Licking App. No. CA–3250, unreported, 1987 WL 13472. The appellant in *Justice* was ordered to pay support for his two mentally retarded children pursuant to a decree of divorce. Sometime after the divorce, the children began receiving SSI benefits. The appellant filed a motion in the trial court to terminate or modify his child support payment, arguing that the SSI benefits created a substantial modification of circumstances entitling him to a modification of the child support payments. The trial court disagreed, relying upon *Oatley, supra.* The Fifth District affirmed the trial court's ruling.

---

2. In *Wickline,* our court also emphasized that under R.C. 3113.215(A)(2), SSI is not included when computing the gross income of the parent.

■ After our review of the record in the case *sub judice*, we find that the trial court did not abuse its discretion. The trial court's judgment that Jason's SSI benefits should not be set off against appellant's child support obligation is not unreasonable, arbitrary or unconscionable. Certainly a court may consider a child's financial resources and earning ability when determining an appropriate child support award. A court is not, however, required to include the child's financial resources when determining child support. All cases should be evaluated in view of their unique facts and circumstances. In the case at bar, we will not substitute our judgment for that of the trial court. The facts adduced below do not support the conclusion that the child support award is inequitable or results in a windfall.

Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

## II

■ In his second assignment of error, appellant argues that the court's finding that appellant failed to prove that Jason is emancipated is against the manifest weight of the evidence. Appellant asserts that the evidence presented at the hearing shows that Jason is able to work and to support himself, that he possesses an intellect capable of meeting college curriculum demands, and that his current unemployment is due primarily to appellee's overprotection.

■■ When reviewing evidence presented at trial, an appellate court must not reweigh the evidence. In *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus, the Ohio Supreme Court held:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." See, also, *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 566 N.E.2d 154; *Ross v. Ross* (1980), 64 Ohio St.2d 203, 18 O.O.3d 414, 414 N.E.2d 426.

An appellate court should not substitute its judgment for that of the trial court when there exists competent, credible evidence going to all the essential elements of the case. In *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276, the court wrote:

"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."

In the case *sub judice*, we find that the record contains sufficient competent, credible evidence to support the trial court's finding. When making its decision,

the trial court cited the doctor's evaluation of Jason and appellee's testimony. The court noted that the doctor felt that Jason will require lifelong assistance and close observation as well as ongoing individualized care from a team of specialists. The court noted that appellee testified that she believes Jason's physical and mental condition make him unemployable. Finally, the court specifically stated that while appellant gave examples of jobs one may perform while sitting down for an extended period, appellant offered no proof that Jason could perform these jobs or that an employer would hire Jason for them.

In *Omohundro v. Omohundro* (1982), 8 Ohio App.3d 318, 8 OBR 427, 457 N.E.2d 324, the court wrote:

"The meaning of the term 'emancipation' was discussed by this court in the case of *Pappas v. Pappas* (Dec. 24, 1974), Franklin App. No. 74AP–375, unreported, wherein it is stated:

" 'The emancipation of a child may be effected in many ways: marriage, entering the armed services, leaving home, becoming employed and self-subsisting, or in any other manner in which the parent authorizes or occasions the child to remove himself from parental subjugation, control and care. See 59 American Jurisprudence 2d, Parent and Child, Section 93.' " 8 Ohio App.3d at 320, 8 OBR at 429, 457 N.E.2d at 326.

Whether a child is emancipated, so as to relieve a parent from the obligation of support, depends upon the particular facts and circumstances of each individual case. *Id.; In re Owens* (1994), 96 Ohio App.3d 429, 645 N.E.2d 130. The party seeking relief from a support order bears the burden of proving that the child is emancipated. *Bagyi v. Miller* (1965), 3 Ohio App.2d 371, 32 O.O.2d 518, 210 N.E.2d 887; *Daniels v. Daniels* (Jan. 17, 1985), Montgomery App. No. 8897, unreported, citing *Schirtzinger v. Schirtzinger* (1952), 95 Ohio App. 31, 52 O.O. 372, 117 N.E.2d 42.

We note that the rules of law governing emancipation do not point to specific facts or a bright-line standard. Rather, the unique facts and circumstances of each case must be evaluated. In the case at bar, based upon the evidence adduced below, we find that the trial court's judgment is supported by sufficient competent, credible evidence.

Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

*Judgment affirmed.*

STEPHENSON and HARSHA, JJ., concur.